UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------------
:
RONALD V. PRIDE, JR.,                       :   CASE NO. 1:17-cv-2610
                                            :
         Plaintiff,                         :
                                            :
    vs.                                     :   OPINION & ORDER
                                            :   [Resolving Docs. 15, 24, 25]
HUNTINGTON NATIONAL BANK,                   :
                                            :
         Defendant.                         :
                                            :
------------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Ronald V. Pride, Jr. sues his former employer, Huntington National Bank, claiming that Huntington fired him because of his disability. Pride suffers from Attention Deficit Hyperactivity Disorder (ADHD) and alleges that Huntington both denied him a reasonable accommodation and fired him because of his disability.

Plaintiff Pride brings claims for disability discrimination under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq*. and 42 U.S.C. § 12112(a) and (b)(5)(A); for retaliation and coercion under 42 U.S.C. § 12203; and for creation of a hostile work environment under the ADA and Title VII of the Civil Rights Act of 1964.[1]

Defendant moves for summary judgment.[2] Plaintiff opposes.[3] For the following reasons, the Court **GRANTS** Defendant's motion for summary judgment.

## I. BACKGROUND

Huntington hired Plaintiff Pride on December 22, 2014.[4] Huntington transferred Pride to the Willoughby Hills Giant Eagle bank branch on September 20, 2015.[5] At the time of his termination,

---

[1] Doc. 1.
[2] Doc. 15.
[3] Doc. 20. Defendant replies. Doc. 22.
[4] Doc. 15-1 at ¶ 4.
[5] *Id.* at ¶ 5.

Jeanetta Price supervised Plaintiff Pride.[6] Pride has submitted evidence that he had received a satisfactory performance evaluation from a different supervisor in March 2015.[7]

Pride suffers from ADHD.[8] His medical records reveal that his condition makes it difficult for him to read, concentrate, remember, and respond appropriately to stressful situations including those where "he feels frustrated or underappreciated."[9]

In February 2016, Huntington disciplined Pride for failing to follow bank procedures.[10] He was disciplined again in October 2016 for failing to follow bank procedures by not properly closing out the bank branch on August 24 and September 30, 2016.[11] Nevertheless, he again failed to properly close the bank branch on November 15, 2016; in particular, he failed to send a required email.[12] Then, he asked his supervisor to perform that task for him.[13] When his supervisor refused, Pride responded via text message: "I think ur [sic] being petty. Just copy and paste."[14]

On December 18, 2016, Pride emailed Jennifer Bandenieks, an Employee Relations Consultant at the bank, a Department of Veterans Affairs medical memorandum.[15] In this memo, a Dr. Amal Rubai explained that Pride was being treated for ADHD and that he "has certain limitations regarding social interaction/coping with stress and anxiety, etc."[16] Dr. Rubai continued: "In order, [sic] to help alleviate these symptoms it is imperative to maintain a calm non-judgmental approach and an environment which is supportive to alleviating any undue stress."[17]

Bandenieks emailed Pride the next day to acknowledge that he received the medical

---

[6] *Id.* at ¶ 6.
[7] Doc. 19-1 at 1–8; Doc. 15-1 at ¶ 6.
[8] Doc. 20-7 at 5.
[9] *Id.* at 12–14, 26–27; Doc. 20-8.
[10] Doc. 15-4 at 1; Doc. 14 at 2.
[11] Doc. 15-5 at 1; Doc. 14 at 2–3.
[12] *Id.* at 3.
[13] *Id.* at 3–4.
[14] *Id.*; Doc. 15-7 at 1–2.
[15] Doc. 15-1 at ¶ 9; Doc. 20-8 at 1.
[16] Doc. 15-1 at ¶ 9; Doc. 20-8 at 1.
[17] Doc. 15-1 at ¶ 9; Doc. 20-8 at 1.

memorandum and say that she looked forward to discussing his request for accommodation.[18] She also mentioned that she would be on vacation for the remainder of the year.[19]

Pride did not follow up with any further explanation of his accommodation request.[20] Instead, he simply said he was going to talk to a district manager and that he wanted "some stuff on the record . . . for the future and as reference."[21]

Pride and his new supervisor, Jeanetta Price, had an adversarial relationship. He had spoken to Bandenieks about Price on several occasions prior to December 18, 2016.[22] And one of his co-workers testified at a deposition that Price said that Pride was a problem "from the beginning."[23] The co-worker also testified that she was hired in June or July 2016 and witnessed Price commenting on Pride's disability in a joking or sarcastic way on at least four occasions.[24]

On January 5, 2017, Pride and Price got into a dispute over the location of a money-counting machine.[25] Price moved the money counter to the back room, ostensibly for security reasons.[26] Pride thought it should remain in the front of the branch, apparently because he thought moving the counter to the back would make it more difficult for him to perform his job.[27] According to the co-worker, someone moved the money counter back to the front on January 5, prompting Price to call Pride into her office and yell at him.[28]

At some point during this altercation, Supervisor Price told Plaintiff Pride to leave her office.[29] Pride did not leave immediately.[30] Instead, he "collected [his] thoughts" for an unspecified duration

---

[18] Doc. 15-1 at ¶ 10; Doc. 15-11 at 1.
[19] Doc. 15-1 at ¶ 10; Doc. 15-11 at 1.
[20] Doc. 15-1 at ¶ 11.
[21] *Id.*; Doc. 15-11 at 1.
[22] *Id.* at ¶ 12.
[23] Doc. 19-10 at 9.
[24] *Id.* at 5, 11.
[25] *See id.* at 11–12.
[26] Doc. 14 at 4.
[27] *Id.*
[28] Doc. 19-10 at 12.
[29] *See* Doc. 14 at 5–6.
[30] Doc. 1 at 2. While statements in a complaint cannot be used to defeat summary judgment, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), "[a] statement in a complaint . . . is a judicial admission," *Am.*

of time and then asked Price to call Human Resources so that they could hear the "screaming and disrespect" she was directing at him.[31] Pride eventually left the office.[32]

Pride was terminated later that same day.[33]

Plaintiff Pride brings claims against Defendant Huntington for disability discrimination under the ADA; retaliation and coercion under 42 U.S.C. § 12203; and creation of a hostile work environment under the ADA and Title VII.[34] Huntington now moves for summary judgment.[35]

## II. SUPPORTING MATERIALS

The Court would ordinarily proceed directly to its summary judgment analysis. But in this case, the parties both seem to misunderstand the sorts of evidence they may rely upon at the summary judgment stage. The Court therefore begins by sorting through the parties' summary judgment materials to exclude those that cannot be considered to support or oppose summary judgment.

### A. Defendant Huntington's Improper Evidence

To begin with, Rule 56 of the Federal Rules of Civil Procedure requires that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge."[36] Likewise, hearsay statements in an affidavit cannot be considered for purposes of summary judgment.[37]

Defendant Huntington runs afoul of this rule by relying heavily on the affidavit of Employee Relations Consultant Bandenieks.[38] Although Bandenieks purports to have "firsthand knowledge" of everything she describes in her affidavit,[39] it is plain that she does not.

For instance, her descriptions of Pride's disciplinary history at Huntington and his text message exchange with his supervisor, Jeanetta Price, are transparently summaries of other

---

Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 226 (6th Cir. 1988). And "[f]actual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them." Id.

[31] Doc. 14 at 6; Doc. 1 at 2.
[32] Doc. 14 at 6.
[33] Doc. 19-10 at 11–12; see Doc. 15-1 at ¶¶ 17–18.
[34] Doc. 1.
[35] Doc. 15. Plaintiff Pride opposes. Doc. 20. Defendant replies. Doc. 22.
[36] Fed. R. Civ. P. 56(c)(4).
[37] See Dole v. Elliot Travel & Tours, Inc., 942 F.2d 962, 968–69 (6th Cir. 1991).
[38] Doc. 15-1 at ¶ 1.
[39] Id.

documents in the record that describe events Bandenieks herself did not witness. Since those documents are admissible as business records, this is not particularly problematic for Huntington. Bandeniek's testimony is essentially a certification that those documents are Huntington's business records.

But Huntington also relies on Bandenieks to describe Plaintiff Pride's final confrontation with Price. In that confrontation, Huntington claims that, for ten minutes, Pride staged a sit-in in Price's office after arguing with her about the proper placement of a money-counting machine.[40] As another paragraph of the affidavit makes clear, Bandenieks was not present for that altercation—indeed Price instant-messaged her to see if she could call into the meeting.[41] Nor does Bandenieks have personal knowledge of the motivations of the individual who ultimately decided to fire Pride. As a result, she has no personal knowledge of what happened during that meeting or leading up to it. And the Court cannot consider those portions of her affidavit.

That said, Bandenieks did have some direct interaction with Plaintiff Pride and the Court sees no reason why she would not have knowledge of when Pride was hired, when he was fired, what branches he worked at, who his supervisors were, etc. The Court will therefore consider paragraphs 1 through 6, 9 through 13, 15, and 18 of Bandeniek's affidavit as statements of fact, and paragraph 7 as a certification of various employment documents, but no others.

### B. Plaintiff Pride's Improper Evidence

Pride, too, attempts to rely on improper evidence.

Pride submits, along with his brief in opposition, a host of documents that he purportedly sent or gave to Huntington's Human Resources Department or other managers that relate his various grievances with management, his suggestions for improvement, and his version of his final altercation

---

[40] *Id.* at ¶¶ 14, 16–17.
[41] *Id.* at ¶ 15.

with Supervisor Price.[42]  The problem is that none of these documents are sworn statements: they are neither affidavits given under oath nor are they subscribed under penalty of perjury as permitted by 18 U.S.C. § 1746.  As a result, they cannot be considered at the summary judgment stage.[43]  That Pride may have sent these documents to Huntington officials before filing this lawsuit does not change this fact.

Pride has attempted to remedy this deficiency by filing a sur-reply that includes additional evidence and an affidavit that, among other things, attests to the accuracy of some of the evidence he submitted before.[44]  But that is improper.

For one thing, the Court's rules generally do not permit a party to file a sur-reply without first requesting leave from the Court.[45]  Pride did not do so.

More importantly, however, there is no reason Pride could not have provided this evidence earlier.  While he may only have received some of this evidence from Huntington recently, that is largely because he has apparently procrastinated in seeking discovery.[46]  The Court will not allow Pride to sandbag the opposing party merely because he has not been diligent in pursuing evidence to support his claims.[47]  For that reason, the Court **STRIKES** Pride's sur-reply and all of the supporting documentation filed with it.

### III. SUMMARY JUDGMENT ANALYSIS

Having disregarded or stricken the parties' improper evidence, the Court now considers whether Defendant Huntington is entitled to summary judgment.  The Court concludes that it is.

---

[42] Doc. 20-10; Doc. 20-11; Doc. 20-14; Doc. 20-15.
[43] *Worthy v. Mich. Bell Tel. Co.*, 472 F. App'x 342, 343–45 (6th Cir. 2012); *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 363 n.3 (6th Cir. 2001); *Dole*, 942 F.3d at 968–69.
[44] *See generally* Doc. 24 and attachments.
[45] *Eberhard v. Chi. Title Ins. Co.*, No. 1:11-cv-834, 2014 WL 12756822, at *2 (N.D. Ohio Jan. 8, 2014).
[46] Doc. 21 at 3–4.
[47] *Cf. Wike v. Vertrue, Inc.*, No. 3:06-0204, 2007 WL 869724, at *8 (M.D. Tenn. Mar. 20, 2007) ("[T]he Court will not allow Vertrue to sandbag the Plaintiff by presenting . . . evidence [with a reply brief].").

Case No. 1:17-cv-2610
Gwin, J.

## A. Legal Standard

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is proper when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[48] The moving party must first demonstrate that there is no genuine dispute as to a material fact entitling it to judgment.[49] Once the moving party has done so, the non-moving party must set forth specific facts in the record—not its allegations or denials in pleadings—showing a triable issue.[50] The non-moving party must show more than some doubt as to the material facts in order to defeat a motion for summary judgment.[51] But the Court views the facts and all reasonable inferences from those facts in favor of the non-moving party.[52]

When parties present competing versions of the facts on summary judgment, a district court adopts the non-movant's version of the facts unless incontrovertible evidence in the record directly contradicts that version.[53] Otherwise, a district court does not weigh competing evidence or make credibility determinations.[54]

## B. ADA Discrimination Claim

In order to establish a claim for discrimination under the ADA, a plaintiff may "either [introduce] direct evidence of discrimination or [prove] inferential and [indirect] evidence which would support an inference of discrimination . . . The direct evidence and [indirect] evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both."[55] Based on the circumstances of Plaintiff's case, the Court will discuss each of these in turn.

---

[48] *Killion v. KeHE Distribs., LLC*, 761 F.3d 574, 580 (6th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)).
[49] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[50] *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587.
[51] *Id.* at 586.
[52] *Killion*, 761 F.3d at 580 (internal citations omitted).
[53] *See Scott v. Harris*, 550 U.S. 372, 380 (2007).
[54] *Koren v. Ohio Bell Tel. Co.*, 894 F. Supp. 2d 1032, 1037 (N.D. Ohio 2012) (citing *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 470 (6th Cir. 2012)).
[55] *Cf. Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348-49 (6th Cir. 1997); *see also Hendrick v. W. Reserve Care Sys.*, 355 F.3d 444, 452–54 (6th Cir. 2004).

### 1. Direct Evidence

"Direct evidence is evidence that 'if believed, requires the conclusion that unlawful discrimination was at least a motivating factor' in the adverse employment action."[56] In the realm of employment discrimination, the Sixth Circuit found that "statements that suggest that the decision-maker relied on impermissible stereotypes to assess an employee's ability to perform can constitute direct evidence."[57] Additionally:

> The context in which the comments are made is also critical. Discriminatory remarks made while implementing an adverse employment action are likely to reveal animus. In contrast, occasional disparaging remarks made during the regular course of business about . . . protected characteristics are much more likely to be considered the kind of 'isolated and ambiguous' comments that do not trigger employer liability.[58]

For example, an employer's statement to an employee that he was "too old to carry the mail" made while terminating the employee was sufficiently direct evidence to create a genuine dispute of material fact as to whether the employee was terminated for discriminatory reasons.[59] However, an employer's comments about an employee's age and memory loss made six and a half months before the employee was terminated were "too isolated and ambiguous" to support a finding of discrimination, where there was no evidence that the employer "subsequently communicated any discriminatory animus" to the employee when he terminated him.[60] And a supervisor's reference to an employee as "the mentally ill guy on Prozac that's going to shoot the place up" (referring to an employee with Attention Deficit Disorder) on one occasion was also too "isolated and ambiguous" to be direct evidence of discrimination.[61]

Here, Plaintiff Pride has—at best—shown that his supervisor made derogatory comments

---

[56] *Erwin v. Potter*, 79 F. App'x 893, 896 (6th Cir. 2003) (quoting *Bartlik v. U.S. Dep't of Labor*, 73 F.3d 100, 103 n.5 (6th Cir. 1996)).
[57] *Erwin*, 79 F. App'x at 897.
[58] *Id.* at 898 (internal citations omitted) (quoting *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1025 (6th Cir. 1993)).
[59] *Id.* at 897.
[60] *Rosso v. A.I. Root Co.*, 97 F. App'x 517, 518–20 (6th Cir. 2004).
[61] *Hopkins v. Elec. Data Sys. Corp.*, 196 F.3d 655, 657, 660-61 (6th Cir. 1999).

about his disability four times between October 2016 (when Price became his supervisor[62]) and his termination on January 5, 2017.[63] Four comments in around three months, unrelated to the time of his termination, are simply too "isolated and ambiguous" to provide direct evidence that Pride was discriminated against because of his ADHD.[64]

### 2. Indirect Evidence

To present a *prima facie* case of disability discrimination using indirect evidence, Plaintiff must establish that (1) he is disabled; (2) he is otherwise qualified for his position, with or without reasonable accommodation; (3) he suffered an adverse employment decision or action; (4) Huntington knew or had reason to know of his disability; and (5) his position remained open or he was replaced.[65] If Plaintiff is successful, then the burden shifts to Defendant to provide a legitimate, non-discriminatory reason for Plaintiff's termination, and if Defendant does so, then the burden shifts back to Plaintiff to show that that explanation was pretextual.[66]

The ADA prohibits discrimination that is a "but-for" cause of an employer's adverse employment action.[67] An employee is not required to show that his disability was the sole reason for his termination.[68] Plaintiff must create a genuine dispute of material fact as to both the *prima facie* case and pretext to survive summary judgment.[69]

In this case, even assuming that Plaintiff Pride could establish a *prima facie* case of

---

[62] Huntington noted this fact in its December 13, 2016 response to the discrimination charge that Plaintiff Pride filed with the EEOC. *See* Doc. 19-1 at 25-26 & n.3.

[63] Pride also asserts in his response to Defendant Huntington's requests for admissions that "Jeanetta Price teased me because of my disability whenever she was within ear distance of me." Doc. 14 at 6. But that statement is neither sworn, properly declared under penalty of perjury nor an admission of Pride's own conduct or an adverse factual condition. As a result, the Court cannot consider it.

[64] *See Erwin*, 79 F. App'x at 898.

[65] *Rosebrough v. Buckeye Valley High Sch.*, 690 F.3d 427, 431 (6th Cir. 2012); *Whitfield v. Tennessee*, 639 F.3d 253, 258-59 (6th Cir. 2011); *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1185 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012) (en banc).

[66] *McDonnell Douglass Corp. v. Green*, 411 U.S. 792, 802-04 (1973); *Whitfield*, 639 F.3d at 259; *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 703 (6th Cir. 2008); *Monette*, 90 F.3d at 1185-86.

[67] *Lewis*, 681 F.3d at 321; *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009).

[68] *Lewis*, 681 F.3d at 315-17.

[69] *Whitfield*, 639 F.3d at 260.

Case No. 1:17-cv-2610
Gwin, J.

discrimination, Plaintiff Pride does not show that Huntington's stated reasons for terminating him were pretextual. Huntington says it fired Pride for insubordination. Plaintiff Pride admits that he failed to leave Price's office when asked,[70] instead sitting in her office for an indeterminate period of time after Price asked him to leave. Plaintiff Pride then asked Supervisor Price to call human resources. This conduct was insubordination. So Pride's ADA discrimination claim fails.

### C. ADA Retaliation

The lack of any direct evidence of discrimination[71] and the presence of non-pretextual explanation for Pride's termination[72] also defeats Plaintiff Pride's ADA retaliation claim.

### D. Failure to Accommodate

To present a *prima facie* case for failure to accommodate a disability under the ADA, Plaintiff must establish that: (1) he is disabled; (2) he is otherwise qualified for his position, with or without reasonable accommodation; (3) Huntington knew or had reason to know about his disability; (4) he requested an accommodation; and (5) Huntington failed to provide the requested accommodation.[73] If Plaintiff establishes this, then "the burden shifts to the employer to demonstrate that any particular accommodation would impose an undue hardship on the employer."[74]

The Court will assume for purposes of summary judgment that Plaintiff is disabled, that he is otherwise qualified for his position, and that Huntington knew about his disability.

An employee "bears the burden of proposing reasonable accommodations; an employee's claim must be dismissed if [he] fails to identify and request such reasonable accommodations."[75] The proposed accommodations must be "objectively reasonable."[76] The Sixth Circuit found that:

---

[70] Doc. 1 at 2.
[71] *See* Rorrer v. City of Stow, 743 F.3d 1025, 1047 (6th Cir. 2014).
[72] *See* EEOC v. Ford Motor Co., 782 F.3d 753, 767 (6th Cir. 2015).
[73] Mosby-Meacham v. Memphis Light, Gas & Water Div., 883 F.3d 595, 603 (6th Cir. 2018); Johnson v. Cleveland City Sch. Dist., 443 F. App'x 974, 982–83 (6th Cir. 2011).
[74] *Johnson*, 443 F. App'x at 983.
[75] *Id.*; *see also* Gantt v. Wilson Sporting Goods Co., 143 F.3d 1042, 1046 (6th Cir. 1998) (finding that the initial burden of requesting an accommodation is placed on the employee).
[76] Cassidy v. Detroit Edison Co., 138 F.3d 629, 633-34 (6th Cir. 1998); *Monette*, 90 F.3d at 1183.

> Our case law establishes no bright-line test for when the form of an employee's request is sufficiently clear to constitute a request for an accommodation. On one hand, we have held that the ADA does not require employees to use the magic words 'accommodation' or even 'disability.' On the other hand, [t]he employer is not required to speculate as to the extent of the employee's disability or the employee's need or desire for an accommodation. The employee must also make it clear that the request is being made because of the employee's disability.[77]

Plaintiff Pride emailed his doctor's note to Bandenieks on December 18, 2016. Although Plaintiff does not appear to request any specific accommodations in the email itself, the note stated that "to help alleviate [Plaintiff Pride's] symptoms it is imperative to maintain a calm non-judgmental approach and an environment which is supportive to alleviating any undue stress."[78] In her response, Bandenieks said that she "look[ed] forward to speaking with [Pride] further regarding [his] accommodation request."[79] For purposes of summary judgment, the Court will find that Plaintiff requested an accommodation from Huntington regarding his ADHD.[80]

Plaintiff must then establish that Huntington failed to provide his requested accommodation. "Once the employee requests an accommodation, the employer has a duty to engage in an 'interactive process' to 'identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.'"[81] "[T]he interactive process is mandatory, and both parties have a duty to participate in good faith."[82]

The Court finds that Bandenieks at least attempted to engage in the required interactive process with Plaintiff through her email exchange with Plaintiff regarding his doctor's note. As Plaintiff did not request any specific accommodations other than a general suggestion of a low-stress environment in his email exchange with Bandenieks, the Court cannot find that Huntington failed to

---

[77] *Judge v. Landscape Forms, Inc.*, 592 F. App'x 403, 407 (6th Cir. 2014) (internal quotation marks and citations omitted) (alteration in original).
[78] Doc. 15-10 at 1.
[79] Doc. 15-11 at 1.
[80] The Court recognizes Defendant's argument that Plaintiff sent the note to Bandenieks merely "for informational purposes." Doc. 15 at 16. However, it is reasonable to infer that Plaintiff was also requesting an accommodation for his disability with this note, albeit not in the most direct manner, especially given that Bandenieks appeared to understand it as a request for an accommodation.
[81] *Melange v. City of Center Line*, 482 F. App'x 81, 84 (6th Cir. 2012) (quoting *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 871 (6th Cir. 2007)); *see also* 29 C.F.R. § 1630.2(o)(3).
[82] *Kleiber*, 485 F.3d at 871.

provide Plaintiff with a requested accommodation based on that conversation.

Likewise, Price's refusal to allow the money-counting machine to remain in the front of the branch cannot be viewed as a failure to accommodate Pride's disability. This is because Pride has not timely presented any cognizable evidence to show why having the money counter in the back of the room prevented him from performing his job effectively with ADHD. His concentration and focus issues might make the availability of the machine a reasonable accommodation, but it is unclear why it would matter that the machine was in a back room rather than at the customer service counter.

Huntington claims (and Pride admits[83]) that Pride did not leave Price's office after Price told Plaintiff Pride to leave Price's Office. If true, Pride was more responsible for increasing the stress level.

### E. ADA Coercion Claim

Courts have either used the ADA retaliation framework[84] or the Fair Housing Act (FHA) interference framework to evaluate interference, coercion, and intimidation claims under the ADA.[85]

Plaintiff cannot establish a *prima facie* case under either framework. The Court has already found that Plaintiff Pride's ADA retaliation claim cannot survive a motion for summary judgment.

In order to establish a *prima facie* case using the FHA interference framework, Plaintiff must demonstrate that: "(1) [he] engaged in activity statutorily protected by the ADA; (2) [he] was engaged in, or aided or encouraged others in, the exercise or enjoyment of ADA protected rights; (3) the defendants coerced, threatened, intimidated, or interfered on account of [his] protected activity; and (4) the defendants were motivated by an intent to discriminate."[86]

Assuming for purposes of this analysis that Plaintiff Pride requested an accommodation under the ADA and therefore fulfills the first two elements, he has not presented any evidence that

---

[83] Doc. 1 at 2.
[84] *See, e.g.*, *Valtchev v. City of New York*, 400 F. App'x 586, 589 (2d Cir. 2010); *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1264 (10th Cir. 2001); *Silk v. City of Chicago*, 194 F.3d 788, 799 (7th Cir. 1999).
[85] *See, e.g.*, *Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 550-51 (7th Cir. 2017); *Brown v. City of Tucson*, 336 F.3d 1181, 1192 (9th Cir. 2003).
[86] *Frakes,* 872 F.3d at 550-51.

Case No. 1:17-cv-2610
Gwin, J.

Defendant Huntington coerced him as a result of his asking for an accommodation or intended to discriminate against him. As explained above, Huntington fired Pride for other, non-disability and protected activity related reasons. And there is no cognizable evidence that the money counter was moved in an effort to coerce, threaten, or intimidate Pride. There is no cognizable evidence that Pride's insubordination did not cause his firing.

## F. Hostile Work Environment

A hostile work environment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[87] Conduct must be both objectively and subjectively abusive to be actionable.[88] A court must consider "the work environment as a whole,"[89] "includ[ing] the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[90] "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."[91]

To present a claim for a hostile work environment under the ADA, Plaintiff must establish that: (1) he is disabled; (2) he was subjected to unwanted harassment; (3) this harassment was based on his disability; (4) the harassment unreasonably interfered with his work performance; and (5) Defendant either knew or should have known about the harassment and failed to take corrective

---

[87] *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted).
[88] *See Harris*, 510 U.S. at 21-22; *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000).
[89] *See Bowman*, 220 F.3d at 463.
[90] *See Harris*, 510 U.S. at 23.
[91] *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal citation and quotation marks omitted). The Court noted the need to "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Id.* (internal quotation marks omitted). *See also Hibbler v. Reg'l Med. Ctr.*, 12 F. App'x 336, 339 (6th Cir. 2001); *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999).

measures.[92] The Court assumes that Plaintiff is disabled and therefore fulfills the first element.

Because Plaintiff Pride "brought this claim under the ADA," he "must . . . show that any intimidation, ridicule[, or] insult occurred because of [his] . . . disability."[93] "Conversations between an employee and his superiors about his work performance [do] not constitute harassment simply because they cause the employee distress."[94]

Plaintiff Pride and Branch Manager Price apparently disagreed over proper management of the branch—including the location of the money-counting machine—and Price issued Plaintiff a performance improvement plan based on Plaintiff's job performance after she became his manager.[95] According to co-worker Jackson, Price also commented that she viewed Plaintiff as a "problem" because he didn't "understand [his] place as a banker," and that Price wanted to terminate Plaintiff.[96]

By itself, this would not be sufficient to survive summary judgment because it does not clearly implicate Plaintiff Pride's disability.[97] However, Pride's co-worker testified that she heard Price make negative comments regarding Pride's ADHD on "more than four occasions."[98] Price became Pride's manager on October 5, 2016,[99] and Plaintiff was terminated on January 5, 2017.[100] That means Price made these comments at least four times over the course of three months. But Plaintiff Pride gives no evidence that he was present when Price made these statements about Pride. Without some showing that Pride heard Price's comments, it is nowhere clear how those comments interfered with

---

[92] *Plautz v. Potter*, 156 F. App'x 812, 818 (6th Cir. 2005) (setting out the elements and borrowing the *Harris* standard discussed in the preceding paragraph from the Civil Rights Act context); *Trepka v. Bd. of Educ. of the Cleveland City Sch. Dist.*, 28 F. App'x 455, 461 (6th Cir. 2002).
[93] *See Waltherr-Williard v. Mariemont City Sch.*, 601 F. App'x 385, 388 (6th Cir. 2015).
[94] *Keever v. City of Middletown*, 145 F.3d 809, 813 (6th Cir. 1998).
[95] *See* Doc. 15-1 at ¶¶ 6–7; Doc. 19-1 at 13–15; Doc. 19-10 at 9.
[96] Doc. 19-10 at 9.
[97] *See Waltherr-Williard*, 601 F. App'x at 388-89 (finding that an employee presented no evidence that her protected characteristics motivated her employer's alleged hostility); *Trepka*, 28 F. App'x at 461-62 (finding that an employee was unable to present evidence that her employer's negative conduct towards her occurred because of her disability).
[98] Doc. 19-10 at 11.
[99] Huntington noted this fact in its December 13, 2016 response to the discrimination charge that Plaintiff filed with the EEOC. *See* Doc. 19-1 at 25-26 & n.3.
[100] Doc. 14 at 6.

Pride's work performance. Court finds that this insufficient to fulfill the second and third elements for purposes of summary judgment.[101]

Also, Plaintiff has not created a genuine issue of material fact as to whether Price's purported harassment unreasonably interfered with his work performance. Pride does state that he felt compelled to contact Human Resources only after Price became manager.[102] However, none of the proper evidence Pride submitted demonstrates that any harassment that occurred unreasonably interfered with Plaintiff's work performance, especially because Plaintiff admitted that he was able to perform the essential functions of his position.[103] The Court therefore finds that Plaintiff cannot fulfill the fourth element for purposes of summary judgment. Additionally, since the Court cannot find that Price created an actionable hostile environment, there is no basis for Defendant's liability, and no genuine dispute of material fact exists as to the fifth element.

### G. Title VII Harassment

Lastly, because Plaintiff does not claim that he was fired based on his membership in any class protected under Title VII, he has not established a Title VII harassment claim.[104]

### IV. CONCLUSION

For those reasons, the Court **GRANTS** Defendant's motion for summary judgment. Plaintiff Pride's claims are therefore **DISMISSED WITH PREJUDICE**.

The Court also **STRIKES** as improper Plaintiff Pride's sur-reply and the supporting evidence submitted with that sur-reply. To the extent the list of discovery disputes Pride submitted on August

---

[101] *See Trepka*, 28 F. App'x at 462 (noting that "[t]o avoid summary judgment, [the plaintiff] need not prove [the employer's] motivation, but [he] should at least provide some evidence of discrimination").
[102] Doc. 14 at 7.
[103] *Id.* at 4-5.
[104] *See* 42 U.S.C. § 2000e-2 (prohibiting employment discrimination based on "race, color, religion, sex, or national origin").

Case No. 1:17-cv-2610
Gwin, J.

6, 2018,[105] was intended as a renewed motion to compel, it is **DENIED AS MOOT**.


  IT IS SO ORDERED


Dated: August 17, 2018                             *s/     James S. Gwin*
                                                   JAMES S. GWIN
                                                   UNITED STATES DISTRICT JUDGE

---

[105] Doc. 25.